**Filed**
**D.C. Superior Court**
**05/09/2018 16:31PM**
**Clerk of the Court**

## IN THE SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
### Civil Division

| | |
|---|---|
| **JEFFREY REVIS**<br>**3834 Garrison St. NW**<br>**Washington, DC 20016**<br><br>Plaintiff,<br><br>v.<br><br>**TUSTIN CONSTRUCTION**<br>**SERVICES, LLC**<br>**Corporate Headquarters**<br>**2555 Industry Lane**<br>**Norristown, PA 19403**<br><br>Serve:<br><br>**Registered Agent:**<br>**CT Corporation System**<br>**1015 15th Street NW Suite 1000**<br>**Washington, DC 20005**<br>**Defendant.** | Case No. 2018 CA 003279 B<br><br>**JURY TRIAL DEMANDED** |

### CIVIL COMPLAINT FOR EQUITABLE AND MONETARY RELIEF AND DEMAND FOR JURY TRIAL

1. Plaintiff Jeffrey Revis ("Revis" or "Plaintiff"), by and through counsel, files suit against Defendants Tustin Construction Services, LLC ("Tustin" or "Defendant") for violations of the D.C. Wage Payment and Collection Law, D.C. Code § 32-1301, *et seq.*("DCWPCL") and the common law of the District of Columbia.

### PARTIES

2. Plaintiff Revis is a resident of Washington, District of Columbia and a citizen of the United States. Revis is an "employee" as defined by D.C. Code § 32-1301(2).

3. Defendant Tustin is a Pennsylvania corporation that focuses on mechanical services,

and its headquarters is located in Norristown, PA. Defendant Tustin is an "employer" as defined by D.C. Code § 32-1301(1B).

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over the subject matter of this complaint pursuant to D.C. Code § 32-1308(a), which permits employees in the District of Columbia to bring an action to recover unpaid wages and liquidated damages in this Court.

5.  Venue is proper in this Court pursuant to D.C. Code § 32-1308(a) as Defendant Tustin has extensive and deliberate contacts in this District.

## FACTUAL ALLEGATIONS

### *Tustin Hires Revis*

6.  On or around June 17, 2013, Revis began working for Tustin as the General Manager to serve the D.C., Maryland, and Pennsylvania ("Tristate") region.

7.  The Tustin Group is owned by Aireko Construction dba Aireko Enterprises, dba Aireko Abroad.

8.  Revis reported to minority owner, James Sasser, and to principal, Jose Rossi.

9.  As the General Manager for Tustin, Revis was responsible for business planning; marketing and sales planning; safety and client satisfaction program execution; the hiring, firing, and development of key employees; and other duties.

10. Revis spent approximately 60% of his time supporting a project on-site with the Department of Energy in Washington, D.C.

*Revis's Performance Bonus*

11. In an offer of employment letter ("Offer Letter") dated May 30, 2013 (attached hereto as Exhibit 1), Tustin offered Revis annual initial base compensation of $125,000.00, which included a $5,000 guaranteed portion of Performance Bonus to be paid bi-weekly.

12. The Offer Letter identifies the "Initial Performance Bonus" as 6% of net operating income, calculated based on audited financial statements for year-to-date net earnings through September 31, 2014.

13. If Revis met the performance goals identified in the Offer Letter, his performance bonus for 2015 and beyond would increase from 6% of net operating income to 7% of net operating income.

14. The projects on which the Initial Performance Bonus is based include, but may not necessarily be limited to, Revis's assignments with the LEAP Academy ("LEAP") and with the Department of Energy ("DOE").

15. The Performance Goals include both financial and operational components and are outlined in Section VI of the Offer Letter.

16. Revis achieved the goals outlined in Section VI of the Offer Letter. Accordingly, Tustin owed Revis a performance bonus for 2015 and 2016 equal to 7% of net operating income, as outlined in the Offer Letter.

17. 7% of the net operating income is presently unknown but is expected to exceed $189,000.

### *Revis's Non-Competition Agreement*

18. Tustin required Revis to sign a non-disclosure and non-competition agreement ("Non-Disclosure Agreement") as part of the on-boarding process with the company (attached hereto as Exhibit 2).

19. Section 2.2 of the Non-Disclosure Agreement provides that Revis is to be paid $12,000 upon termination in consideration for his not obtaining employment in a territory where Tustin is licensed.

20. Tustin failed to pay Revis $12,000 owed to him in exchange for his signing the Non-Disclosure Agreement.

### *Tustin's Failure to Reimburse Expenses*

21. Page 3 of the Offer Letter identifies additional agreed-to terms of the employment relationship. For example, section VII requires Tustin to pay Revis $600 per month as an auto allowance.   Tustin failed to pay Revis the $600 per month agreed to by the parties.

### *Tustin Terminates Revis And Fails to Pay His Bonus That Is Due*

22. On December 1, 2016, Tustin, through Sasser, terminated Revis's employment. Sasser did not provide an explanation as to why the company was terminating Revis' employment.

23. Sasser stated that Revis had lasted "longer than [Sasser] expected" and that Revis was a "great salesman," or words to that effect.

24. Tustin terminated Revis for no reason other than to avoid paying Revis his bonus and other wages that had come due.

### *Tustin Denies Revis His Wages*

25. Prior to his termination, Revis met all of the goals as set forth in the Offer Letter. Therefore, Revis is entitled to 7% of the net operating income as set forth in the Offer Letter. This is a presently unknown amount that is expected to exceed $189,000.

26. To date, Tustin has only paid Revis $57,000 for his work in achieving Goal 1 and Goal 2, creating a deficit of approximately $105,000.

27. In addition to Revis being owed 7% of the net operating income as set forth in the Offer Letter, Tustin owes Revis $7,000 in reimbursements related to the company vehicle, and $12,000 in consideration for Revis having signed the Non-Disclosure Agreement.

### COUNT I
FAILURE TO PAY WAGES UPON DISCHARGE
In Violation of the D.C. Wage Payment and Collection Law,
D.C. Code § 32-1303, *et seq.*

28. Revis incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

29. Revis was an "employee" and Defendants are an "employer" as those terms are defined in D.C. Code § 32-1301.

30. To date, Defendants owe Revis wages earned in the form of: (i) his performance bonus calculated at 7% of net operating income; (ii) unpaid reimbursements; and (iii) $12,000 in consideration for having signed the Non-Disclosure Agreement.

31. These unpaid wages were due to Revis from Tustin at the time of his termination.

32. A violation of D.C. Code Ann. § 32-1303 entails liability for the wages due as well as liquidated damages in the amount of "10 per centum of the unpaid wages for each working day during which such failure shall continue after the day upon which payment is hereunder required, or an amount equal to treble the unpaid wages, whichever is smaller."

33. D.C. Code § 32-1308 provides that a court shall allow costs of the action, including costs or fees of any nature, and reasonable attorney's fees, to be paid by the defendant for a violation of D.C. Code Ann. § 32-1303.

34. Revis has suffered damages for this violation, including back wages unlawfully withheld and reasonable attorneys' fees and costs.

35. Revis has also suffered such that equitable relief is required.

<u>COUNT II</u>
UNJUST ENRICHMENT
In Violation of the Common Law of the District of Columbia

36. Revis incorporates the allegations set forth in the foregoing paragraphs as though fully alleged herein.

37. At all times relevant, Revis conferred a benefit on Tustin. Specifically, as part of his employment, Revis worked as a General Manager for Tustin, Revis was responsible for business planning; marketing and sales planning; safety and client satisfaction program execution; the hiring, firing, and development of key employees; and other duties.

38. Rather than pay Revis the bonus he earned, Tustin retained the 7% of net operating income owed to Revis for its own benefit and to increase its profit margin.

39. Because Tustin retained the 7% of net operating income owed to Revis for its own benefit, Tustin unjustly enriched itself at the expense of Revis.

<u>COUNT III</u>
BREACH OF CONTRACT
In Violation of the Common Law of the District of Columbia

40. Revis incorporates the allegations contained in all the foregoing paragraphs as though fully alleged herein.

41.    The Offer Letter constitutes a valid contract entered into between Revis and

6

Tustin. Therein, Revis promised to perform his job duties to be measured against certain metrics, and Tustin agreed to pay Revis based upon objective measurements of his success.

42.    Tustin had an obligation arising out of that contract to compensate Revis in accordance with the terms contained within the Offer Letter.

43.    Tustin breached its duty to compensate Tustin as required in the Offer Letter.re

44.    Tustin failed to meet its obligations under this contract by failing to compensate Revis according to the terms of the Offer Letter.

45.    Revis, by contrast, fully performed all of his obligations under this contract.

46.    As a direct and proximate result of the breach, Revis has suffered and will continue to suffer actual damages.

## PRAYER FOR RELIEF

Plaintiff Jeffrey Revis prays this Honorable Court for judgment against Defendant and respectfully requests economic damages, liquidated damages, compensatory damages, punitive damages, reasonable attorney's fees, pre-judgment interest, court costs, and any other relief that this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the D.C. Superior court Rules of Civil Procedure, Plaintiff Jeffrey Revis demands a trial by jury for any and all issues proper to so be tried.

Respectfully submitted,

Andrew M. Witko, DC Bar  No. 155251
R. Scott Oswald, D.C. Bar No. 458859
The Employment Law Group, P.C.
888 17th Street, NW, 9th floor

Washington, D.C. 20006
(202) 261-2836
(202) 261-2835 (facsimile)
awitko@employmentlawgroup.com
soswald@employmentlawgroup.com
*Counsel for Plaintiff Jeffrey Revis*

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

Jeffrey Revis

Case Number: **2018 CA 003279 B**

vs

Date: May 9, 2018

Tustin Construction Services, LLC

☐ One of the defendants is being sued
in their official capacity.

| Name: *(Please Print)* Andrew M. Witko | R. Scott Oswald | Relationship to Lawsuit |
|---|---|
| Firm Name: The Employment Law Group, P.C. | ☒ Attorney for Plaintiff |
| Telephone No.: 202-261-2836    Six digit Unified Bar No.: 155251 (A. Witko) | ☐ Self (Pro Se) ☐ Other: |

TYPE OF CASE: ☐ Non-Jury    ☒ 6 Person Jury    ☐ 12 Person Jury

Demand: $ 1,000,000    Other:

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.: _____  Judge: _____  Calendar #: _____

Case No.: _____  Judge: _____  Calendar#: _____

---

NATURE OF SUIT:    *(Check One Box Only)*

**A. CONTRACTS**                                                    COLLECTION CASES

☒ 01 Breach of Contract
☐ 02 Breach of Warranty
☐ 06 Negotiable Instrument
☐ 07 Personal Property
☐ 13 Employment Discrimination
☐ 15 Special Education Fees

☐ 14 Under $25,000 Pltf. Grants Consent
☐ 17 OVER $25,000 Pltf. Grants Consent
☐ 27 Insurance/Subrogation
   Over $25,000 Pltf. Grants Consent
☐ 07 Insurance/Subrogation
   Under $25,000 Pltf. Grants Consent
☐ 28 Motion to Confirm Arbitration
   Award (Collection Cases Only)

☐ 16 Under $25,000 Consent Denied
☐ 18 OVER $25,000 Consent Denied
☐ 26 Insurance/Subrogation
   Over $25,000 Consent Denied
☐ 34 Insurance/Subrogation
   Under $25,000 Consent Denied

**B. PROPERTY TORTS**

☐ 01 Automobile
☐ 02 Conversion
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

☐ 03 Destruction of Private Property
☐ 04 Property Damage

☐ 05 Trespass

**C. PERSONAL TORTS**

☐ 01 Abuse of Process
☐ 02 Alienation of Affection
☐ 03 Assault and Battery
☐ 04 Automobile- Personal Injury
☐ 05 Deceit (Misrepresentation)
☐ 06 False Accusation
☐ 07 False Arrest
☐ 08 Fraud

☐ 10 Invasion of Privacy
☐ 11 Libel and Slander
☐ 12 Malicious Interference
☐ 13 Malicious Prosecution
☐ 14 Malpractice Legal
☐ 15 Malpractice Medical (Including Wrongful Death)
☐ 16 Negligence- (Not Automobile,
   Not Malpractice)

☐ 17 Personal Injury- (Not Automobile,
   Not Malpractice)
☐ 18 Wrongful Death (Not Malpractice)
☐ 19 Wrongful Eviction
☐ 20 Friendly Suit
☐ 21 Asbestos
☐ 22 Toxic/Mass Torts
☐ 23 Tobacco
☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE        IF USED

CV-496/June 2015

# Information Sheet, Continued

**C. OTHERS**

- [ ] 01 Accounting
- [ ] 02 Att. Before Judgment
- [ ] 05 Ejectment
- [ ] 09 Special Writ/Warrants
  (DC Code § 11-941)
- [ ] 10 Traffic Adjudication
- [ ] 11 Writ of Replevin
- [ ] 12 Enforce Mechanics Lien
- [ ] 16 Declaratory Judgment

- [ ] 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- [ ] 18 Product Liability

- [ ] 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- [ ] 29 Merit Personnel Act (OHR)
- [ ] 31 Housing Code Regulations
- [ ] 32 Qui Tam
- [ ] 33 Whistleblower

**II.**

- [ ] 03 Change of Name
- [ ] 06 Foreign Judgment/Domestic
- [ ] 08 Foreign Judgment/International
- [ ] 13 Correction of Birth Certificate
- [ ] 14 Correction of Marriage
  Certificate
- [ ] 26 Petition for Civil Asset Forfeiture (Vehicle)
- [ ] 27 Petition for Civil Asset Forfeiture (Currency)
- [ ] 28 Petition for Civil Asset Forfeiture (Other)

- [ ] 15 Libel of Information
- [ ] 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- [ ] 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- [ ] 21 Petition for Subpoena
  [Rule 28-I (b)]
- [ ] 22 Release Mechanics Lien
- [ ] 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- [ ] 24 Petition for Structured Settlement
- [ ] 25 Petition for Liquidation

**D. REAL PROPERTY**

- [ ] 09 Real Property-Real Estate
- [ ] 12 Specific Performance
- [ ] 04 Condemnation (Eminent Domain)
- [ ] 10 Mortgage Foreclosure/Judicial Sale
- [ ] 11 Petition for Civil Asset Forfeiture (RP)

- [ ] 08 Quiet Title
- [ ] 25 Liens: Tax / Water Consent Granted
- [ ] 30 Liens: Tax / Water Consent Denied
- [ ] 31 Tax Lien Bid Off Certificate Consent Granted

_____          _____
Attorney's Signature                            May 9, 2018

                                                          Date

CV-496/ June 2015

**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
Telephone: (202) 879-1133 Website: www.dccourts.gov

Jeffrey Revis
_____
Plaintiff

vs.

Tustin Construction Services, LLC                    Case Number    2018 CA 003279 B
_____
Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Andrew Witko; Scott Oswald
_____
Name of Plaintiff's Attorney

888 17th Street NW Suite 900                By _____
_____
Address                                              Deputy Clerk
Washington, D.C. 20006

(202) 331-2883                              Date    05/11/2018
_____
Telephone

_Clerk of the Court_

如需翻译，请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202)879-4828로 전화주십시오    የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                              Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

Jeffrey Revis
_____
                                                    Demandante
          contra
                                                    Número de Caso: _____

Tustin Construction Services, LLC
_____
                                                    Demandado

**CITATORIO**

Al susodicho Demandado:

          Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

          A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

Andrew Witko; Scott Oswald                          *SECRETARIO DEL TRIBUNAL*
_____
Nombre del abogado del Demandante

888 17th Street NW Suite 900                        Por: _____
_____
Dirección                                                  Subsecretario
  Washington, D.C. 20006
_____

(202) 331-2883                                      Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828          Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202)879-4828 로 전화주십시오        ইংৱিা না পা (202) 879-4828        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

          IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO*.

          Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                              Super. Ct. Civ. R. 4

# Exhibit 1

**TCS**

## TUSTIN CONSTRUCTION SERVICES

www.thetustingroup.com

May 30, 2013

Jeffrey Revis
3834 Garrison St. NW
Washington, DC 20016

Dear Jeffrey:

This letter constitutes a formal offer of employment with Tustin Construction Services (TCS). Listed below are the details of this offer, outlining terms of an employment and compensation agreement for this executive position.

**I Position:** You will be employed as General Manager, TCS, initially working out of the Tustin Group Norristown PA office to serve the tri-state region. You will report to Josen Rossi and Tus Sasser. You will initially have one direct report, Randell Torres – Project Manager.
A position description outlining job duties, reporting structure and mutual expectations will be reviewed at the start of your employment. Primary responsibilities will include TCS Business Planning, Marketing/Sales Plan, P&L Responsibility, Safety and Client Satisfaction Program Execution, Hiring/Firing / Development of key employees, among other TCS Executive level roles to successfully start-up a multidisciplinary general construction services business , grow it profitably in the tri-state area and beyond according to Tustin and Aireko group business principles, operational culture and governance structure.

**II Signing Bonus:** $5,000
Per agreement, a onetime only payment to accommodate child care expenses will be provided.

**III Annual Initial Base Compensation/Salary:** $125,000
You will be paid an annual base compensation of $125,000 that includes a $5,000 Guaranteed portion of Performance Bonus, both of which will be paid bi-weekly in the total amount of $4,807.70.

**IV Initial Performance Bonus (PB):** Your initial PB will be 6% of net operating income – NOI (before taxes, interest and/or depreciation of extraordinary non-recurring items that are not part of regular business financing or capital operations). PB will initially be calculated based on audited financial statements for year-to-date net earnings to Sept 31 2014. PB will be paid within three months of the year-end period, net of guaranteed bonus paid during period and provision for uncollectible debt if any is deemed necessary by internal or external auditors.



**THE TUSTIN GROUP**

Corporate Headquarters
2555 Industry Lane
Norristown, PA 19403
P: 610.539.8200
F: 610.539.2890

Lehigh Valley Office
101 East Mill Street
Quakertown, PA 18951
P: 610.282.2682
F: 610.282.2354

New Jersey Office
408 Bloomfield Drive
West Berlin, NJ 08091
P: 609.567.3550
F: 856.768.2407

TUSTIN CONSTRUCTION SERVIC                                                    An affiliate of THE TUSTIN GROUP

**V Growth/Success Goals:**  Growth/Success goals will be monitored during "TCS year two" (period commencing Oct 1 2014) with measurable goals that, if met, will warrant a base compensation increase, and a PB calculation % increase.  Base compensation will increase to $150,000 (comprised of $138,000 annually, paid bi-weekly, plus a $12,000 guaranteed portion of the performance bonus for the period when the Growth/Success goals are met,  paid at end of the year).   And PB will increase to 7% NOI, for the fiscal year period commencing the year after Growth/Success goals are met.

**VI Growth/Success Metrics and Goals:**

Success Metrics and Goals include both financial as well as key operational performance measures  that are expected of this GM position and demonstrate the GM is successfully running P&L execution, as well as key operational metrics regarding TCS Safety and Client Satisfaction Program

To achieve the PB increase to 7%, and full base compensation increase to $150,000 yearly the GM must show TCS is operated at a "Total Compliance" level with regards to the following:

- OSHA Safety days-away from work incident rate of no more than 2 for own personnel and subcontractor personnel.
- Independent agent client audits per Aireko Construction program yield an Average response by client representative for each job of no less than 2 (a satisfied client)

To demonstrate success running both key operational and financial execution, the following financial Growth/Success goals must be met:

- By October 1, 2014 TCS has an ongoing sales and profit growth as well as a project backlog with projected gross margins that permit TCS to formally capitalize out-of-pocket investment incurred to date (net of $250,000 credit line) and continue growing the business thereon with internally funded working capital
- Between October 1, 2014 and September 31, 2015 TCS achieves a no less than 7% NOI or a no less than $500,000 NOI after its divisional overhead and 3% of sales central company overhead are expensed (the 3% central overhead charge will commence accruing against sales of the period commencing Oct 1 2015, and will remain as the maximum central overhead charge to TCS during a two-year period during which TCS will take advantage of the Aireko and Tustin group real estate, systems and shared-services management, bonding and insurance programs which will be billed to TCS by central office at the wholesale price of the Group plus 15%)

After "TCS year three" the central office overhead charge shall be reviewed by GM and board, and GM may bring alternatives that lower eventual overhead costs to TCS in the future that do not affect TCS and Tustin/Aireko Group ability to share compatible and effective human resources, accounting, cost control, estimating, purchasing and project controls, as well as to have approve own-funded bonding/insurance program or use the enterprise Program with the needed capital charge should bonding requirements necessitate .

TUSTIN CONSTRUCTION SERVICE                                    An affiliate of THE TUSTIN GROUP

**VII Automobile:** You will be provided with a company car commensurate with the position of General Manager, along with a gas card and EZ pass. If you would prefer to receive a monthly auto allowance, $600 will be paid to you monthly through payroll.

**VIII Confidentiality:** A confidentiality agreement will be agreed upon and executed at the commencement of your employment along with a covenant not-to-compete.

**IX Vacation:** You will be entitled to two weeks (10 work days) paid vacation, with one week at start and vacation days to accrue at the rate of .84 days per month thereafter. Vacation may be scheduled prior to accruing the full two weeks with approval from your supervisor.

**X Sick Days:** The Company provides five sick days (5) per year, part of a PTO total of 15 days including vacation that accrue during the first five years of employment. After five years employment, you will be entitled to 15 days paid vacation and 5 paid sick days if needed.

**XI Holidays:** The Company recognizes these 8 holidays: generally these shall be New Year's Day, Good Friday, Independence Day, Memorial Day, Labor Day, Thanksgiving and the day after Thanksgiving, and Christmas as paid holidays.

**XII Group Health Insurance:** Since the company provided health care plan does not provide coverage in the DC area, Tustin Construction Services will reimburse 100% of your current insurance premium through COBRA for medical PPO and dental coverage until such time as we agree upon a long term solution. If you choose to waive participation in the company's medical and dental plans, you will receive a monthly medical reimbursement in the amount of $250.00.

*[handwritten: hmf. 1,200 M]*

**XIII Policy Manual:** You will be issued a handbook that will outline company policy on important personnel matters. This handbook will require your review, acceptance and on-going reference.

**XIV Business Expenses:** You will be reimbursed for reasonable and necessary business expenses incurred in the performance of your duties. This includes start-up expenses related to travel and living costs incurred while working out of the Pennsylvania office (hotel / extended-stay with standard reasonable per diem).

**XV Life and Disability Insurance:** You will be provided with life insurance, long-term disability, and short-term disability insurance coverage. A booklet will be provided to you describing the coverage.

**XVI 401(K):** You will be invited to participate in the company's 401(K) plan once the plan qualifications are met, i.e. age requirement of twenty-one and one full year of service. The details of this plan will be reviewed with you and a booklet provided.

TUSTIN CONSTRUCTION SERV.                                    An affiliate of THE TUSTIN GROUP

**XVII Place of Work and Hours:** Office normal hours are 8:00 AM to 5:00 PM. You will be expected to be in PA or NJ offices a minimum of 3 days per week until otherwise mutually agreed. The TCS GM position will require many hours of hard work and leadership beyond our offices and those of our clients to get TCS successfully launched and nurtured with your leadership to Growth/Success goals and beyond. You will have communication tools and the support of Josen and Tustin, or the shared services heads to make the most of your time.

**XVIII Corporate Training:**  A Corporate Training allowance budget per year will be agreed upon.

**XIX Start Date:**  Your anticipated start date will be Monday, June 17, 2013 or earlier if available. You will be expected by then to have completed a drug test per Tustin Group policy.

Jeff, Josen and I are very pleased to present this offer to you, and welcome you as GM of TCS. I am confident that both you and the organization will benefit from this exciting new business opportunity, the launching of Tustin Construction Services!

Respectfully,

Tus Sasser
President

I accept this offer of employment and agree to all position details stipulated herein.  I also understand that this is "at the will" of both the employer and myself, and that either can terminate this offer at any time with proper notice.

Jeffrey Revis                7/12/2013
                                        Date

Josen Rossi                                Date

Tus Sasser      5/81/2013
                                        Date

4 of 4

# Exhibit 2

## NONDISCLOSURE AND NONCOMPETITION AGREEMENT

This Agreement (this "Agreement") is made as of June 17, 2013 by and between Tustin Construction Services LLC (the "Employer"), and Jeffrey Revis, an employee ("Employee") of Employer.

1. Nondisclosure

    (a)    Confidentiality.

    (i)    During and following the time when Employee is working for Employer, Employee will hold in confidence any and all Confidential Information and will not disclose it to any person except with the specific prior written consent of the Employer or except as otherwise expressly permitted by the terms of this Agreement.

    (ii)    Any trade secrets of the Employer will be entitled to all of the protections and benefits under the applicable state trade secret law and any other applicable law. If any information that the Employer deems to be a trade secret is found by a court of competent jurisdiction not to be a trade secret for purposes of this Agreement, such information will, nevertheless, be considered Confidential Information for purposes of this Agreement. Employee hereby waives any requirement that the Employer submits proof of the economic value of any trade secret or posts a bond or other security.

    (iii)    None of the foregoing obligations and restrictions applies to any part of the Confidential Information that the Employee demonstrates was or became generally available to the public other than as a result of a disclosure by Employee.

    (iv)    Employee will not remove from the Employer's premises (except to the extent such removal is for purposes of the performance of Employee's duties at home or while traveling, or except as otherwise specifically authorized by the Employer) any document, record, notebook, plan, model, component, device, or computer software or code, whether embodied in a disk or in any other form (collectively, the "Proprietary Items"). Employee recognizes that, as between the Employer and Employee, all of the Proprietary Items, whether or not developed by Employee, are the exclusive property of the Employer. Upon termination of this Agreement by either party, or upon the request of the Employer during the Employment Period, Employee will return to the Employer all of the Proprietary Items in Employee's possession or subject to Employee's control, and Employee shall not retain any copies, abstracts, sketches, or other physical embodiment of any of the Proprietary Items.



(b)  Employee Inventions. Each Employee invention (excluding any writing or other invention that is developed by Employee exclusively in his spare time and without the use of any property or Proprietary Items of Employer [i.e. a fictional book or mousetrap]) ("Employee Invention") will belong exclusively to the Employer. Employee acknowledges that all of Employee's writing, works of authorship and other Employee Inventions during the Employment Period are works made for hire and the exclusive property of the Employer, including any copyrights, patents, or other intellectual property rights pertaining thereto. If it is determined that any such works are not works made for hire, Employee hereby assigns to the Employer all of employee's right, title, and interest, including all rights of copyright, patent, and other intellectual property rights, to or in such Employee Inventions. Employee agrees that he will promptly:

(i) disclose to the Employer in writing any Employee Invention;

(ii) assign to the Employer or to a party designated by the Employer, at the Employer's request and without additional compensation, all of Employee's right to the Employee Invention for the United States and all foreign jurisdictions;

(iii) execute and deliver to the Employer such applications, assignments, and other documents as the Employer may request in order to apply for and obtain patents or other registrations with respect to any Employee Invention in the United States and any foreign jurisdictions;

(iv) sign all other papers necessary to carry out the above obligations; and

(v) give testimony and render any other assistance [but without expense to Employee] in support of the Employer's rights to any Employee Invention.

**[Note: It is the intent of the parties that Mr. Revis devote his full time and attention to the performance of his duties on behalf of the Employer (i.e. TCS).]**

2.  Noncompetition

2.1  Acknowledgments.  Employee acknowledges that: (a) the services to be performed by him/her under this Agreement are of a special, unique, unusual, extraordinary, and intellectual character; (b) the Employer's business is regional in scope and its products and services are marketed in the Commonwealth of Pennsylvania, regions of the states of Maryland, Delaware and New Jersey (the "Territory"); (c) the Employer competes with other businesses that are or could be located in any part of the Territory; (d) the provisions of this Section 2 are reasonable and necessary to protect the Employer's business.

2.2  Covenants.  In consideration of the acknowledgments by Employee and in consideration of the amount of $5,000 paid to Employee by the Employer at beginning of employment and $12,000 to be paid upon termination, the Employee covenants that he will not anywhere within a 100-mile radius of any place of business of the Employer in the Territory, directly or indirectly, during the

**TUSTIN CONSTRUCTION SERVICES**

*An affiliate of* **THE TUSTIN GROUP**

period in which Employee is employed by the Employer (the "Employment Period") and for a period of one (1) year following the termination of such Employee's employment with the Employer (the "Post-Employment Period"):

   (a) except in the course of his employment hereunder and as described on Schedule 2.2(a) hereto, engage or invest in, own, manage, operate, finance, control, or participate in the ownership, management, operation, financing, or control of, be employed by, associated with, or in any manner connected with, lend Employee's name or any similar name to, lend Employee's credit to or render services or advice to, any business whose products or activities compete in whole or in part with the products or activities of the Employer;

   (b) whether for employee's own account or for the account of any other person, solicit business of the same or similar type being carried on by the Employer, from any person known by Employee to be a customer of the Employer, whether or not Employee had personal contact with such person during and by reason of Employee's employment with the Employer;

   (c) whether for employee's own account or the account of any other person (i) solicit, employ, or otherwise engage as an employee, independent contractor, or otherwise, any person who is or was an employee of the Employer at any time during the Employment Period or in any manner induce or attempt to induce any employee of the Employer to terminate his employment with the Employer; or (ii) interfere with the Employer's relationship with any person, including any person who at any time during the Employment Period was an employee, contractor, supplier, or customer of the Employer; or

   (d) defame and/or disparage the Employer or any of its members, managers, officers, employees, or agents.

  If any covenant in this Agreement is held to be unenforceable because of the duration of such provision or the scope of the subject matter thereof or the area covered thereby, the parties agree that the court making such determination shall have the power to reduce the duration, scope and/or area of such provision and, in its reduced form, said provision shall then be enforceable.

  Employee will, so long as this Agreement is in effect, give notice to the Employer, within ten (10) days after accepting any other offer of employment, of the identity of Employee's future employer. Employee agrees that the Employer may notify such future employer that Employee is bound by this Agreement and, at the employer's election, furnish such future employer with a copy of this Agreement or relevant portions thereof.

  3. <u>Governing Law</u>.  This Agreement will be governed by the laws of the Commonwealth of Pennsylvania, without regard to conflicts of laws principles.

  4. <u>Jurisdiction</u>.  Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement shall be brought against either of the parties in the courts of the Commonwealth of Pennsylvania.

  5. <u>Sections Headings, Construction</u>.  The headings of Sections in this Agreement are

provided for convenience only and will not affect its construction or interpretation. All references to "Section" or "Sections" refer to the corresponding Section or Sections of this Agreement unless otherwise specified. All words used in this Agreement will be construed to be of such gender or number as the circumstances require. Unless otherwise expressly provided, the word "including" does not limit the preceding words or terms.

6.    Severability.  If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

7.    Equitable Remedies.    In addition to all other remedies provided at law or in equity, the Employer shall be entitled to both preliminary and permanent injunctions against Employee to prevent a breach or contemplated or threatened breach by Employee of any of the foregoing covenants, without the necessity of proving actual damages; and the existence of any claim, demand, cause of action, or action of Employee against the Employer, whether predicated upon this Agreement or otherwise, shall not constitute a defense to the enforcement by the Employer of any such covenants.  In the event of an actual breach of any of the foregoing covenants, the Employer shall have the right to recover damages for all losses, actual and contingent, and the right to require Employee to account for and pay over to the Employer all profits or other benefits (collectively "Benefits") derived or received by Employee as a result of any transactions constituting such breach, and Employee hereby agrees to account for and pay over such Benefits to the Employer.  Each of the rights and remedies enumerated above shall be independent of the others, and shall be severally enforceable, and all of such rights and remedies shall be in addition to, and not in lieu of, any other rights and remedies available to the Employer at law or equity.

8.    Notices.    All notices, requests, consents and other communications, required or permitted to be given hereunder, shall be in writing and shall be deemed to have been duly given if delivered personally or by overnight courier providing proof of delivery, or if mailed first-class, postage prepaid, by registered or certified mail (notices sent by mail or overnight courier shall be deemed to have been given on the date sent), in each case addressed as follows (or to such other address as either party shall designate by notice in writing to the other in accordance herewith):

If to the Employer:        Tustin Construction Services, LLC
2555 Industry Lane
Norristown, Pennsylvania 19043
Attention: President

If to Employee:        the address provided on the signature page of
this Agreement.

9.    Assignment.    This Agreement may be assigned by the Employer to any purchaser of all or substantially all of the Employer's assets and shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and assigns.

*[The rest of this page intentionally left blank]*

10.    Counterparts.    This Agreement may be executed and delivered in any number of counterparts, each of which, when executed and delivered, shall be an original, but all of which shall together constitute one and the same agreement.

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement as of the date above first written above.

EMPLOYER:                                      EMPLOYEE:

Tustin Construction Services, LLC

By: _____          _____ 7/12/2013
Tustin Sasser                                  Jeffrey Revis
President                                       General Manager Tustin Construction Services
                                               3834 Garrison St NW
                                               Wahington DC 20016

TUSTIN CONSTRUCTION SERVICES

*An affiliate of* THE TUSTIN GROUP

Schedule 2.2(a)

Other Business Activity of Employee

Ongoing minor sales consulting with Servis Contractors in DC; and
Existing consulting relationships with C&C Complete Enterprises in Maryland for work in the
Metro DC area, and a site in West Virginia.  C&C is working with GSH for a couple of CFM
deals in DC/VA and I was the intermediary.

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Telephone: (202) 879-1133 • Website: www.dccourts.gov**

JEFFREY REVIS
   Vs.                                                       C.A. No.          2018 CA 003279 B
TUSTIN CONSTRUCTION SERVICES, LLC

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("Super. Ct. Civ. R.") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the summons, the complaint, and this Initial Order and Addendum. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in Super. Ct. Civ. R. 4(m).

(3) Within 21 days of service as described above, except as otherwise noted in Super. Ct. Civ. R. 12, each defendant must respond to the complaint by filing an answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in Super. Ct. Civ. R. 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an initial scheduling and settlement conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than seven business days before the scheduling conference date.
No other continuance of the conference will be granted except upon motion for good cause shown.

(6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

Chief Judge Robert E. Morin

Case Assigned to: Judge ROBERT R RIGSBY
Date:  May 11, 2018
Initial Conference: 10:30 am, Friday, August 24, 2018
Location:  Courtroom 201
     500 Indiana Avenue N.W.
     WASHINGTON, DC 20001

CAIO-60

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. D.C. Code § 16-2825 Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W. Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmail@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Actions Branch. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief   Judge   Robert   E.   Morin